UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ROBERT L. HOLLEMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CAUSE NO. 2:14-CV-019 PS |
| vs. | ) |
| | ) |
| JOHN BUNCICH, *et al.*, | ) |
| | ) |
| Defendants. | ) |

OPINION AND ORDER

Robert L. Holleman, a *pro se* prisoner, filed a complaint under 42 U.S.C. § 1983. (DE 1.) Pursuant to 28 U.S.C. § 1915A, I must review the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(a), (b). To survive dismissal, a complaint must contain enough to state a claim for relief that is plausible on its face and raise the right to relief above the speculative level. *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602-03 (7th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 602 (internal quotation marks omitted). Thus, "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original). Nevertheless, I must bear in mind that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings

drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation and quotation marks omitted).

According to the complaint, Holleman is an inmate within the Indiana Department of Correction ("IDOC"). In 2007, he was diagnosed with celiac's disease by a doctor at Wabash Valley Correctional Facility ("Wabash Valley"). Because celiac's patients cannot eat foods containing gluten, he was placed on a no-gluten diet at Wabash Valley. In September 2013, Holleman was temporarily housed at the Lake County Jail so he could attend a court hearing pertaining to a state petition for post-conviction relief. Prior to his arrival, he sent a letter to John Buncich, the Sheriff of Lake County, to alert him that he had specific dietary needs due to celiac's disease. He explained that he could not eat any wheat products, submitted a memo related to the foods he could eat, and attached a copy of his current diet card.

On September 3, 2013, Holleman was taken to the jail. Shortly after his arrival, he was served a tray for dinner consisting almost entirely of things he could not eat, including sausage, bread, potatoes, and cookies. He explained his dietary restrictions to the officer delivering the trays. Holleman claims the officer "got smart with [him]" (DE 1 at ¶ 7) and left the tray, but then later returned with a different tray containing some type of rice casserole. Holleman explained that he could not eat the rice casserole, either. Shortly thereafter, Holleman was taken to see a nurse and he explained his dietary restrictions to her. Nevertheless, he claims that over the course of the next three days, he was repeatedly served trays of food containing mostly items he could not eat. As a result, he often went without meals or ate very little of what was provided.

Holleman claims that during this period he complained to a jail guard, Officer Mattingley (first name unknown) about his meals, but the officer was rude to him and dismissive of his

problem. He claims that on September 5, 2013, he told another officer escorting him to court about the meal problem, and the officer told him he would "write out a complaint for him" (DE 1 at ¶ 21), but Holleman does not know whether he ever did. On the afternoon of September 6, 2013, Holleman was taken to see the jail doctor, Dr. William Forgey. After Holleman explained his diagnosis, the doctor said that he understood Holleman's dietary restrictions, and he agreed that Holleman could not eat many of the foods regularly served by the jail, including the rice casserole he had been given. The doctor told Holleman that he had spoken with his brother-in-law earlier that day, who had called to express concern about Holleman's dietary needs. The doctor promised to provide Holleman with an appropriate diet.

That evening, however, Holleman was again given the rice casserole, which he claims he could not eat. Two officers attempted to obtain some different food for Holleman from the jail kitchen, but for unknown reasons they were unable to do so. Sometime after dinner, a mental health worker visited Holleman and told him that Sheriff Buncich sent her because of the phone call from Holleman's brother-in-law earlier that day. Despite speaking with this individual and filing a grievance about his diet the following day, on September 8, 2013, and September 9, 2013, he still received meals consisting mainly of foods he could not eat. On September 9, 2013, Holleman left the jail and returned to the custody of the IDOC.

In addition to the problem with the food, Holleman claims that he was housed under substandard conditions during his time at the jail. Specifically, he asserts that the jail was filthy, excessively cold, smelled of feces, and was significantly overcrowded, requiring him to sleep on a concrete slab on the floor for several nights, which aggravated a prior back injury. Based on

these events, Holleman sues several individuals, including Dr. Forgey, Sheriff Buncich, and various staff at the jail, asserting the denial of his Eighth Amendment rights.

In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" so that "a prison official's act results in the denial of the minimal civilized measure of life's necessities." *Id*. (internal quotation marks omitted). Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to be provided with adequate food, clothing, bedding, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006); *Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996). On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to his health or safety. *Farmer*, 511 U.S. at 834. As the Seventh Circuit has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations and quotation marks omitted); *see also Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999) (where inmate complained about severe deprivations but was ignored, he established a "prototypical case of deliberate indifference").

Inmates are also entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with

deliberate indifference to that medical need. *Farmer*, 511 U.S. at 834. A medical need is "serious" if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). For a medical professional to be held liable for deliberate indifference, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008).

Here, Holleman asserts that he needed a special diet because of a medically diagnosed condition. He claims that despite being made personally aware of his need for a special diet, both Sheriff Buncich and Dr. Forgey failed to take adequate steps to ensure that his dietary needs were met. As a result, he went without meals or had inadequate food for several days, causing him to lose almost ten pounds during the six days he was at the jail. Giving him the inferences to which he is entitled at this stage, he has alleged a plausible deliberate indifference claim against these defendants.[1]

Holleman also seeks to sue "Jane Doe #1," Sheriff Buncich's secretary, whom he claims falsely assured his brother-in-law that his dietary needs were being met. Holleman has not stated a constitutional claim against this defendant. "Section 1983 does not establish a system of

---

[1] I note that Holleman misidentifies Sheriff Buncich as the jail warden throughout his complaint. It is not entirely clear whether Holleman contacted Buncich by name with his concerns about the food, or whether he contacted the jail warden. In light of his *pro se* status, and giving his complaint liberal construction, he has alleged enough to proceed further against Sheriff Buncich. If this defendant was sued in error, however, Holleman is free to seek leave to file an amended complaint that names the jail warden in place of Sheriff Buncich, or adds the warden as a defendant if both individuals were involved in these events.

vicarious responsibility." *Burks v. Raemisch*, 555 F.3d 592, 593 (7th Cir. 2009). The secretary was responsible for answering the phone; she cannot be held responsible for the failure of other jail staff to provide Holleman with adequate meals. As the Seventh Circuit has explained:

> Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under §1983 for not being ombudsmen. [The] view that everyone who knows about a prisoner's problem must pay damages implies that [a prisoner] could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right.

*Id.* at 595. Here, the secretary did not cause the problem with the meals, nor is there anything to indicate she stood in the way of its resolution. "The most one can say is that [she] did nothing, when she might have gone beyond the requirements of her job and tried to help him." *Id.* at 596. This does not state a claim under § 1983, since "public employees are responsible for their own misdeeds but not for anyone else's." *Id.* Accordingly, Jane Doe #1 will be dismissed as a defendant.

Holleman also seeks to sue "Jane Doe #2," whom he identifies as the food service director at the jail. He does not mention this individual in the narrative section of the complaint, and there is no basis to plausibly infer that she had direct personal involvement in these events. It appears Holleman is trying to hold her liable because she is responsible for overseeing operations in the kitchen, but there is no general supervisory liability under Section 1983. As the Seventh Circuit has explained, a supervisor must be personally involved in the misconduct of his or her subordinates in order to be held liable for the violation of a plaintiff's constitutional rights. *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001). Mere negligence in failing to

discover and prevent a subordinate's misconduct is not enough. *Id*. "The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference." *Id*. Here, Holleman does not allege, nor is there a basis in the complaint to plausibly infer, that Jane Doe #2 had direct personal knowledge of his dietary restrictions and disregarded them, or otherwise turned a blind eye to his dietary needs. Instead, the only allegation pertaining to her is that she was responsible for the oversight of the jail food service. This does not state a plausible claim for relief for the reasons stated, and she will be dismissed as a defendant.

Holleman also seeks to sue two members of the correctional staff, Officer Mattingley, the officer who was rude to him when he spoke with him over the intercom about the problem with his meals, and an unknown sergeant who supervised the correctional staff on Holleman's cellblock. As discussed above, it is apparent from the complaint that Holleman was seen by a nurse and a doctor during this period, and as a non-medical staff member, Officer Mattingley was entitled to defer to medical staff regarding what type of diet Holleman needed. *See Burks*, 555 F.3d at 595. His rude comments and insensitivity might be considered unprofessional, but they do not give rise to a constitutional claim. *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) (observing that verbal harassment or rude comments by prison staff do not constitute cruel and unusual punishment); *Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987) (observing that conduct does not violate the Constitution simply because it is unprofessional). As to the unknown sergeant, Holleman appears to be trying to hold him responsible because he supervised correctional staff on the cellblock. As explained above, however, the sergeant cannot be held

vicariously liable for the actions of his subordinates. *Chavez*, 251 F.3d at 651. Furthermore, as non-medical staff, he too would be entitled to defer to medical staff regarding the diet Holleman should be served. *See Burks*, 555 F.3d at 595. Accordingly, these two individuals will be dismissed as defendants.

As noted above, Holleman also claims that he was denied proper bedding, heat, clothing, and sanitation during his six days at the jail. It appears he is trying to hold Sheriff Buncich responsible in connection with this claim. For the reasons discussed above, Sheriff Buncich cannot be held liable solely because he is the official responsible for overseeing operations at the jail. *Chavez*, 251 F.3d at 651. Giving the complaint liberal construction, however, it can be read to allege that Holleman complained to Sheriff Buncich about these issues and/or that the problems were so significant they would have been obvious to him when he was working at the jail. *Vinning-El v. Long*, 482 F.3d 923, 924-25 (7th Cir. 2007) (observing that deliberate indifference can be established through circumstantial evidence, by showing that the conditions would have been obvious to prison personnel "working in the vicinity"). He will be permitted to proceed on a conditions of confinement claim against Sheriff Buncich.

For these reasons, the court:

(1) **GRANTS** the plaintiff leave to proceed against John Buncich and Dr. William Forgey for monetary damages in their individual capacities for failing to provide him with his medically prescribed diet in violation of the Eighth Amendment;

(2) **GRANTS** the plaintiff leave to proceed against John Buncich for monetary damages in his individual capacity for failing to provide him with adequate bedding, clothing, heat, and sanitation in violation of the Eighth Amendment;

(3) **DISMISSES** Jane Doe #1, Jane Doe #2, Officer Mattingley, and Sergeant John Doe #1 as defendants;

(4) **DISMISSES** any and all other claims contained in the complaint;

(5) **DIRECTS** the United States Marshals Service to effect service of process on John Buncich and Dr. William Forgey pursuant to 28 U.S.C. § 1915(d); and

(6) **ORDERS** John Buncich and Dr. William Forgey to respond, as provided for in the FEDERAL RULES OF CIVIL PROCEDURE, only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

**SO ORDERED**.

ENTERED: April 15, 2014.    s/ Philip P. Simon
                            PHILIP P. SIMON, CHIEF JUDGE
                            UNITED STATES DISTRICT COURT