UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| ROBERT L. HOLLEMAN, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | CAUSE NO. 2:14-CV-019 PS |
| vs. | ) | |
| JOHN BUNCICH, *et al.*, | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Robert L. Holleman, a *pro se* prisoner, spent six days in the Lake County Jail, and during that period of incarceration he claims he was deprived of his right to a medically prescribed diet. (DE 7, 76.) He has sued the Lake County Sheriff and another person, but the present motion concerns the case he has brought against Dr. William Forgey, the jail's medical director. Dr. Forgey now seeks summary judgment. But because there is no evidence that Dr. Forgey had any responsibility for dispensing the meals Holleman received, his motion for summary judgment will be granted, and Dr. Forgey will be dismissed from the case.

**Factual Background**

Dr. Forgey is affiliated with Correctional Health Indiana, Inc., a corporation that provides correctional health services to inmates at the Lake County Jail on a contract basis. (DE 104, Forgey Affidavit, ¶ 2.) Dr. Forgey serves as the jail's Medical Director, wherein he provides direct medical care, treatment and services to inmates at the jail, directed the activities of the nurse practitioners, recommended appropriate health care policies for the

jail, and had access to and regularly uses the inmates' medical records. *(Id.)* Dr. Forgey held this position during the time period in question. *(Id.*, ¶¶ 2-3.)

This case concerns Holleman's six day stay at the Lake County Jail. He was an inmate there from September 3-9, 2013. *(Id.*, ¶ 3.)* At that time, the Lake County Jail maintained its own dietary service which routinely determined meal menus and also prepared all meals for the inmates. *(Id.* ¶ 5.)* Dr. Forgey's job as the jail's Medical Director did not include the determination of meal menus, the preparation of inmate meals, or the supervision of personnel working in the jail's dietary service. *(Id.)* In 2013, the jail had a special gluten-free medical diet plan that did not include foods with soy, hydrogenated soy or flour, and which was available to inmates who medically required it. *(Id.*, ¶ 6.)*

Upon Mr. Holleman's arrival at the jail on September 3, 2013, he had a routine physical assessment in the jail infirmary which included obtaining a medical history from him and taking his vital signs. *(Id.*, ¶ 7; Ex. B.)* Mr. Holleman's history of Celiac disease was documented on his clinical record at that time. *(Id.*; Exhibit B, p. 19.) Mr. Holleman was 5'10" tall and weighed 182 lbs. *(Id.)* Following the initial routine assessment, Dr. Forgey entered an order for Mr. Holleman to receive the special gluten free medical diet. *(Id.*, Exhibit B, p. 17.) The usual and customary practice at that time was for such orders to be hand-carried by the infirmary staff to the jail's dietary service. *(Id.* (Aff.) ¶ 7.) Once an order for the special gluten-free medical diet was entered, it was the responsibility of the jail's dietary service to prepare and serve meals consistent with that plan. *(Id.)* Despite the order, Mr. Holleman received gluten on his food trays. (DE 130, Holleman Dec., ¶ 10.)

2

Half way through his six day stay at the jail, Mr. Holleman was seen by Dr. Forgey during a sick call visit in the jail infirmary. (DE 104, Forgey Aff., ¶ 8.) During the visit, Mr. Holleman complained that he was starving from not having proper food to eat. (DE 130, Holleman Dec. ¶ 12.) At the time, he weighed 179 lbs., and he had a Body-Mass Index of 25.7. *(*DE 104, Ex. B, at 7.*)* It was Dr. Forgey's understanding that Mr. Holleman had not been eating since arriving at the jail. *(Id.)* It was Dr. Forgey's judgment at the time that Mr. Holleman's weight loss was largely due to his voluntary refusal to eat the meals being served to him and not as a result of any disease process. *(Id.*, ¶ 8.) Dr. Forgey maintains that he assured Mr. Holleman during that visit that he was being given a gluten-free diet. *(Id.)* This is reflected in the medical records. (*Id*.) Nevertheless, Mr. Holleman asserts that Dr. Forgey told him that "the meat in the rice casserole that the jail was attempting to serve [to him] over the last [3] or [4] days contained gluten/soy/or hydrogenated soy and that Plaintiff should not eat those meals." (DE 130, Holleman Dec. ¶ 17.)

It is Dr. Forgey's opinion that Mr. Holleman's weight loss on September 6 of three pounds since arriving at the jail was not clinically significant, and that his BMI on that date of 25.7 was healthy from a clinical standpoint. *(*DE 104, ¶ 8.) The order for Mr. Holleman to receive the special gluten-free medical diet was canceled only after he was released from the jail on September 9, 2013. *(Id.)* Mr. Holleman was then sent to Pendleton Correctional Facility. He weighed 172 pounds when he arrived at Pendleton. (DE 130, Holleman Dec. ¶ 11.)

The most common clinical signs and symptoms in patients with Celiac disease and/or gluten sensitivity are diarrhea, constipation, abdominal pain and/or heartburn. *(DE 104, ¶ 9.)* During Mr. Holleman's sick call visit with Dr. Forgey on September 6, 2013, he did not demonstrate any of these objective clinical signs or symptoms of Celiac disease or gluten-sensitivity, and he did not otherwise appear to be ill. *(Id.)*

**Discussion**

Dr. Forgey now seeks summary judgment. Before reaching the merits of Mr. Holleman's claims, it is first necessary to resolve a motion to strike that Dr. Forgey has filed in connection with the summary judgment briefing.

**I.      Motions to Strike**

Dr. Forgey moves to strike portions Mr. Holleman's Statement of Genuine Disputes (DE 129 at 4-6) and declaration (DE 130 at 4-8), arguing they contain matters that are inadmissible and unsubstantiated. "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

First, Dr. Forgey seeks to strike paragraph 16 of Mr. Holleman's declaration, which states, "The Lake County Jail has one (1) diet tray for [sic] everyone no [sic] matter what diet the person is on." (DE 130, ¶ 16.) Dr. Forgey argues that this paragraph must be stricken because it is not based on personal knowledge. Mr. Holleman counters that he "was at the Lake County Jail long enough to learn what types of diets were available." (DE

4

151 at 2.) Mr. Holleman's claim is merely a conclusory assertion; he has provided no information from which to infer that his belief is reasonable or justifiable. Nor does it seem plausible that Mr. Holleman would have personal knowledge of such information. Mr. Holleman was not an employee of the jail nor did he have any special inside knowledge of the jail's operations. Nor did he work in or have any special knowledge of the jail's food service department. He was simply an inmate at the jail for six days.

Surely, Mr. Holleman may be able to make a declaration about what he observed or recalls - such as the fact that he may have only seen one type of diet tray at the jail - but he must first lay an adequate foundation for that knowledge or recollection. FED. R. EVID. 602. Absent such a foundation, Mr. Holleman offers only speculation as to how many diet trays the Lake County Jail could and/or did serve. And speculation is not enough to satisfy the personal knowledge requirement. *Markel v. Bd. of Regents of Univ. of Wis. Sys.*, 276 F.3d 906, 912 (7th Cir. 2002) ("[A] party to a lawsuit cannot ward off summary judgment with an affidavit . . . based on . . . conjecture.") (citation omitted). Consequently, Mr. Holleman's statement that the Lake County Jail served only one diet tray is inadmissible. What's more, not only is this assertion inadmissible, but it is contrary to the admissible evidence in this case, which establishes that the jail offered a number of food options to accommodate a wide array of medical conditions. (*See* The Fourth Floor Medical Diet Plan, DE 63-2; DE 104 at ¶ 6.)

Next, Dr. Forgey seeks to strike paragraph 19 of Mr. Holleman's declaration, which provides:

> Defendant Forgey had a responsibility as the Medical Director/Doctor of the Lake County Jail to follow through [once he had written Holleman a gluten-free medical diet order] and see to it that Holleman had proper food [gluten-free food] that he could eat [and not turn a blind eye] while he was incarcerated at the Lake County Jail in September 2013.

(DE 130 at 6 (brackets original).) Dr. Forgey argues that declaring him to have a legal duty to ensure that Mr. Holleman actually received a special gluten-free food tray is an impermissible legal conclusion. It is true that declarations stating legal conclusions are inadmissible. *Liberles v. Cook County*, 709 F.2d 1122, 1129 (7th Cir. 1983). Mr. Holleman defends this statement by claiming that it is not a legal conclusion, but is a fact based on the Lake County Jail Policy regarding medical diets, which is signed by Dr. Forgey. I have reviewed that policy and, even though Dr. Forgey signed it, *see* DE 63-2, nowhere does that policy suggest that he had the obligation that Mr. Holleman declares. As such, I agree that this statement must be stricken as in impermissible legal conclusion.

Dr. Forgey's final two motions to strike are trifles. Dr. Forgey seeks to strike paragraph 21 of Mr. Holleman's declaration, which provides that Dr. Forgey "should have had a heightened sense of responsibility" regarding the provision of medical care in the jail due to a prior settlement that the Lake County Jail entered into with the Department of Justice. (DE 130 at 7.) Dr. Forgey also seeks to strike portions of Mr. Holleman's Statement of Genuine Issues, arguing that it contains numerous errors and impermissible statements. These are unnecessary. Motions to strike are usually only granted in circumstances where the contested evidence causes prejudice to the moving party. *Kuntzman v. Wal-Mart*, 673 F.Supp. 2d 690, 695 (N.D. Ind. 2009). That is not the case here. When ruling on the motion

for summary judgment, I am capable of sifting through the evidence, arguments and purported disputes under the applicable federal rules and case law, giving each purported dispute the credit to which it is due.

## II. Motion for Summary Judgment

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate, however, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* To determine whether a genuine issue of material fact exists, I must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in his or her own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). If the nonmoving party fails to establish the existence of an essential element on which he or she bears the burden of proof at trial, summary judgment is warranted. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

7

Here, Holleman alleges Dr. Forgey violated the Eighth Amendment by failing to take adequate steps to ensure that he received his medically prescribed diet.[1] Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). For a medical professional to be held liable for deliberate indifference, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (quotation marks and citation omitted).

Dr. Forgey does not dispute, and nor could he, that Mr. Holleman's Celiac disease constitutes an objectively serious condition. Instead, Dr. Forgey claims that he was not deliberately indifferent to that condition. Here, the undisputed admissible evidence shows that Dr. Forgey was aware of Holleman's special dietary needs on account of his Celiac disease and that, in response, he entered a timely order to the jail's

---

[1] Notably, Mr. Holleman also alleges Dr. Forgey conspired with others to violate his constitutional rights. However, Mr. Holleman was not granted leave to proceed on any such conspiracy claims. Nor has Mr. Holleman presented any evidence to support them. For both of these reasons, Mr. Holleman's conspiracy claim requires no further discussion.

8

dietary service to have Mr. Holleman receive a special gluten-free medical diet that was available. Because of that, I cannot extend any responsibility for Mr. Holleman not receiving adequate meals to Dr. Forgey. *See Greeno*, 414 F.3d at 656 (noting that there is no deliberate indifference when the complaints have been investigated and then referred to providers who could be expected to address the plaintiff's concerns) (citations omitted).

Mr. Holleman recognizes that Dr. Forgey entered an order for him to receive a special diet. Nevertheless, Mr. Holleman is attempting to hold Dr. Forgey liable because Mr. Holleman did not receive those gluten-fee meals. Dr. Forgey was responsible for ordering the jail's dietary service to give Holleman a special gluten-free diet. It was the responsibility of the jail's dietary service to prepare and serve meals consistent with that plan. Dr. Forgey cannot be held responsible for the failure of the jail staff to provide Holleman with those adequate meals because "section 1983 does not establish a system of vicarious responsibility." *Burks v. Raemisch*, 555 F.3d 592, 593 (7th Cir. 2009). Dr. Forgey did not cause the problem with the meals, nor is there anything to indicate he stood in the way of Mr. Holleman receiving adequate nutrition. And under § 1983 "public employees are responsible for their own misdeeds but not for anyone else's." *Id.* at 596. In other words, whether the jail's dietary services department acted improperly in failing to execute on Dr. Forgey's order is a matter to be taken up with the Sheriff, not

Dr. Forgey. Because there has been no deliberate indifference shown on Dr. Forgey's part, he is entitled to judgment as a matter of law.[2]

## Conclusion

For these reasons, the court:

(1) **GRANTS** the defendant's motion for summary judgment (DE 102);

(2) **GRANTS IN PART** the defendant's motion to strike (DE 143); and

(3) **DISMISSES** Dr. William Forgey as a defendant in this case.

**SO ORDERED**.

ENTERED: January 29, 2016.                    s/Philip P. Simon
                                              Chief Judge
                                              United States District Court

---

[2] Briefly, as a final matter, nothing about Mr. Holleman's September 6 visit to the infirmary changes my conclusion. Although Mr. Holleman complained of weight loss as a result of not receiving adequate nutrition, there is no evidence that Dr. Forgey was deliberately indifferent to his Celiac disease at any time. When Dr. Forgey saw Mr. Holleman for a sick call, it was his opinion that Mr. Holleman's weight loss of three pounds since arriving at the jail was not clinically significant, and that his BMI on that date of 25.7 was healthy from a clinical standpoint. Nor did Mr. Holleman appear ill. Ultimately, Dr. Forgey did not believe that Mr. Holleman presented any serious medical need during the visit that required any further treatment.